LAND, J.
 

 A hard-surface highway, known as the Patterson road, was constructed within the city limits, and completed under contract in November, 1918, by the city of New Orleans. This road adjoins and parallels the Mississippi river on the west side, and extends from Algiers to Stanton Landing, a distance of 5.82 miles.
 

 In 1922, the cavings of the bank of the river in front of this public highway necessitated the construction of levees further back from the river, thereby cutting off and destroying, on two separate occasions, a total of 5,420 feet of the Patterson road.
 

 The present suit is a mandamus proceeding brought by the city of New Orleans, under Act 50 of 1920, to compel the Orleans levee board to construct two new sections oi the Patterson road in the place of the two parts cut off and destroyed in the relocations of the new levees.
 

 From a judgment recalling and annulling the alternative writ of mandamus issued herein, the city of New Orleans has appealed.
 

 The defenses urged by the Orleans levee board are twofold;
 

 First. That Act 50 of 1920 does not apply to the city of New Orleans.
 

 Second. That said act violates article 16, §§ 1, 2, And 6, and article 4, § 12, of the Constitution of 1921.
 

 Act 50 of 1920 is an amendment and reenactment of Act 19 of 1918, and requires all of the levee boards throughout the state—
 

 “to replace, to rebuild and to reconstruct all gravel, shell or other hard-surfaee roads adjacent to or running alongside of the levees when such roads are destroyed or caused to be removed by the building of new levees or the enlargement of old levees, or to cause such roads to be rebuilt or reconstructed by contract or otherwise at the expense of the levee district in which said road is located; the section of new road to be constructed to be of the same material and specifications as the road destroyed.” Section 1 of Act 50 of 1920.
 

 Section 2 of said act provides:
 

 “That the boards of commissioners of the respective levee districts may and are hereby authorized to contract for the replacing and rebuilding of said roads as required under section 1 of this act with the police jury or juries' having jurisdiction or control thereof.”
 

 Section 3 of the act reads as follows:
 

 “That as soon as it is determined by any board of levee commissioners or levee board, or its engineers, the destruction and removal of a public road or highway is necessary or unavoidable in the construction of a new levee or the enlargement of an old levee, it shall be the duty of the president of such boards of levee commissioners, or levee boards, to immediately give notice of the fact to the president of the police jury of the parish having jurisdiction or control over such road or public highway, indicating the locality and section of the old road to be destroyed or removed and the location of- the new levee; and it shall be the duty of the police jury immediately on receipt of such notice to lay out or cause to be laid out a new road and give written notice of the fact together with the location of the new road, and specifications- thereof, which shall be in accordance with the existing road; that immediately on receipt of such notice and specification, the president of the board of levee commissioners, or levee board, shall immediately construct and build, or cause to be constructed and built, by contract or otherwise, such section of new road, which said section of new road shall be made suitable for use or traffic before the old section of the road is destroyed, except in cases of emergency, caused by caving banks and threatening flood.”
 

 
 *1023
 
 It is provided in section 4 of the act:
 

 “That should any levee board fail for any Teason after the receipt of location and specification of the new road from the police jury, to begin immediately the construction of such section of road or highway, the police' jury having jurisdiction shall have the right to cause such new section of road to be built by contract or otherwise at the expense of the board of levee commissioners, and the police jury shall have right of action against such board of levee commissioners in any court of competent jurisdiction to recover any amount so expended and whatever judgment may be finally rendered against said board as well as any amount expended by the board itself in constructing such new section of road shall be paid out of the taxes collected by it in the same manner as other disbursements are made.”
 

 1. The city of New Orleans is coextensive in limits with the parish of Orleans. It is the governing authority of the entire territory embraced within said parish and is, to all legal intents and purposes, the police jury of the parish of Orleans, in so far as the provisions of Act 50 of 1920 are concerned. This is a general act applicable to all the levee boards throughout the state, without exception, and necessarily its provisions, if not in conflict with the present Oonstitution of the state, extend to the city of New Orleans.
 

 2. In our opinion, the provisions of Act
 
 SO of
 
 1920 are inconsistent with section 6 of article 16 of the Oonstitution of 1921, and ceased upon its adoption.
 

 It is expressly provided in section 1 of Act 50 of 1920 that: «
 

 “The section of new road to be constructed [is] to be of the
 
 same material mid specificar tions
 
 as the road destroyed.”
 

 It is also provided in section 4 of the act that, upon the failure of a levee board to build the new section of the road, after proper demand made by a police jury, the police jury may construct the same under contract, and may obtain judgment against the levee board for
 
 “any amount so expended,"
 
 which “shall be paid out of the taxes collected by it in the same manner as other disbursements are made.” (Italics ours.)
 

 It is clear from these provisions that the purpose of Act 50 of 1920 is
 
 to replace the value of
 
 the part of the old road, which has been destroyed in the construction of the new levee.
 

 The act is in direct conflict in this particular with section 6 of article 16 of the Constitution of 1921, which provides that:.
 

 “Lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid- for at a price not to exceed the assessed value for the preceding year; provided, this shall not apply to batture, nor to property control of which is vested in the state or any subdivision thereof-for the purpose of commerce.”
 

 In the case of Boyce Cottonseed Oil Mfg. Co. v. Board of Com’rs, 160 La. 727, 731, 107 So. 506, 508, it is said:
 

 “Our conclusion is that the Constitution means that the assessed value of the property taken for levee purposes shall be
 
 the measure of value
 
 of such property, and does not mean merely to fix a limit of compensation.”
 

 See, also, Green v. Board of Com’rs, 163, La. 117, 119, 111 So. 619.
 

 “Assessed value” is by no means “replacement value,” and may be, in many instances, far from it. •
 

 A public highway built within the limits of a city is for the common use of its inhabitants. It is public property and
 
 extra eommeroium.
 
 C. C. arts. 454, 458; Police Jury v. McCormack, 32 La. Ann. 624. Consequently, the Patterson road is not property, the control of which is vested in the city of New Orleans, for the purpose of commerce. The exception contained in the proviso of section 6 of article 16 of the Constitution excluding “property, control over which is vested in the state or in any subdivision thereof for the purpose of commerce,” clearly refers to the property of the state placed under the supervision of the board of commissioners of the port of New
 
 *1025
 
 Orléans, or to property of similar status. Const. 1921, “art. 6, §§ 17 and 18.
 

 It is provided in section 2 of article 16 of the present Constitution that:
 

 “For the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto, the governing authority of each district may levy annually a tax not to exceed five mills on the dollar on all taxable property situated within the alluvial portions of said districts subject to overflow,” etc.
 

 If we concede, for the sake of argument, that the destruction of parts of the Patterson road was incidental to the construction of the new levees, we become confronted squarely with the proposition that no such exception is contained in the proviso of section 6 of article 16 of the present Constitution, and no provision is made in the body of section 6 for the payment of compensation for any purpose incidental to levees or levee drainage.
 

 The plain language of this section is that:
 

 “Lands and improvements thereon hereafter
 
 actually used or destroyed for levees or levee drainage purposes
 
 shall be paid for at a price not to exceed the assessed value for the preceding year.” (Italics ours.)
 

 The proviso of said section reads:
 

 “Provided, this shall not apply
 
 to batture,
 
 nor to property control of which is vested in the state or any subdivision thereof
 
 for the purpose of commerce.”
 
 (Italics ours.)
 

 A highway within the limits of a city is neither private property, subject to assessment and taxation; it is neither “batture,” nor is it public property vested in the state or any subdivision thereof “for the purpose of commerce.”
 

 The state, under its police power, may deny recovery at all for property damaged in the construction of public levees, and we are-'not inclined to liberalize the act of grace on the part of the sovereign in aUowing in the present Constitution compensation for lands and improvements taken for levees and ■drainage purposes.
 

 Act 50 of 1920 is necessarily superseded by section 6 of article 16 of the Constitution of 1921.
 

 Relator is, therefore, without right to compel respondent levee board to pay for the construction of the two new sections of the Patterson road.
 

 Judgment affirmed.